Good morning. Welcome to the 11th Circuit. We're happy to have you here with us today on this last day of our Oral Argument Week. I'm sure you're all familiar with our lighting system, but just a quick review. When the yellow light goes on, you have two minutes left. When the red light goes on, your time is up. We ask that you please kindly finish your remarks at that time. The only exception is if we ask you questions. We do want to hear the answers, so even if those questions take you over your time limit, we ask that you answer them. And with that, we will begin today with the case of Beazer v. Richmond County Constructors, LLC. We'll hear first from counsel for Mr. Beazer. Good morning, and may it please the Court, Brian Reines for Plaintiff Appellant Mr. Philip Beazer. The crux of this case is whether equitable tolling applies when a plaintiff sends his complaint by express mail so that it will arrive a day before his statutory deadline, and that mailing is delayed through no fault of his own, here through Hurricane Idalia's impact on Augusta. Under these circumstances, the District Court's refusal to apply equitable tolling was both unjust and contrary to binding precedent for two principal reasons. First, Mr. Beazer is necessarily entitled to equitable tolling under Suarez, a precedent this Court asked us to consider, and that's because Suarez applied equitable tolling on similar but weaker facts. Second, this Court must at minimum reverse under black-letter pleading law. As this Court sitting en banc held in Villareal, when equitable tolling is in play, a complaint can be dismissed on statute of limitations grounds at the motion-to-dismiss stage only if tolling is foreclosed. And tolling is certainly not foreclosed here because the record does not preclude the conclusions that Mr. Beazer was reasonably diligent or that these rare and extraordinary circumstances justify tolling. As to Suarez, that case involved the same statutory deadline at issue here, and the plaintiff in Suarez, Ms. Suarez, sent her complaint to the Court the same amount of time before that deadline as Mr. Beazer. And Mr. Beazer's case for tolling is stronger than Ms. Suarez's for three reasons. Actually, I'm going to back up before we get to that. As you point out, this decision was made on a motion to dismiss. Do you think the Court has any authority to consider issues outside of the four corners of the complaint at this stage, or would it need to necessarily convert it to a motion for summary judgment in order to look at facts outside the complaint? So the record in this case that the district court considered was everything that Mr. Beazer submitted, and that was before the district court. I think that was a defensible approach because I think the district court was essentially treating Mr. Beazer's submissions as constructive amendments to the complaint. So I think the Court can and should take that route, consider what the district court considered. Hold on, though. What do you think is the difference between treating something as a constructive amendment to a complaint and considering outside evidence? Because obviously, we have to solve your case, of course, but we also have to think about how that's going to look in other cases. Yeah, so a few responses to that. So I think the top line response would be, I think you can consider the complaint. I mean, everyone in this case up till now has treated Mr. Beazer's assertions in his papers that he filed below before the district court ruled as allegations of the complaint. So I think you can take that approach. But if you don't want to take that approach and you want to just look at the four corners of the complaint, that's all the more reason to reverse because the four corners of the complaint, there's no way equitable tolling is foreclosed. But I think your question is getting at the summary judgment question, right? No one has ever argued that this was a constructive summary judgment ruling. Everyone treated this as a motion to dismiss through and through, including the district court. And I don't think you can construe the district court's ruling as a constructive summary judgment ruling. And that's because Rule 56 requires notice and an opportunity to respond, particularly when the district court is issuing a sua sponte summary judgment ruling. So and I would also note, you know, this didn't come up in the briefing because, again, no one's ever made the summary judgment argument. But there's a recent decision from this Court called Horton v. Gilchrist, 218F4-1221, that's from 2025, where it this Court emphasized that the notice to the plaintiff is particularly important when they're pro se, when you're doing a sort of conversion to summary judgment without telling anyone. But I don't think that's the right thing. I think it's true. I do think that if this, to me, the question is not, was it converted to summary judgment? Because you're right, there was no notice and all of that. But the question is, should it have been? Like, is there more information that your client would like to put before the Court at this point? Or do you think that everything is out there and can be considered part of the complaint? So I think everything can be considered part of the complaint. There's nothing that we're dying to put in the record. I mean, I think the facts we have show equitable tolling under Suarez and under other precedents. But I think the reason that this foreclosure argument matters is because RCC is asking this Court to draw gobs of inferences in their favor, right? They're asking the Court now, for the first time, to infer that the hurricane did not cause the delay. They're asking the Court to infer that he knew about the storm far enough in advance to have acted otherwise. Well, I don't know. Is it that he, I thought the implication of the hurricane was that in the whole argument on their side is that he waited too long to exercise this right and took the chance that he would miss the deadline. It's hard for me to understand that argument because litigants are entitled to the entire duration of their statutory period for filing. So, you know, even if he didn't have these interactions with these lawyers, there would still be an extremely strong case for tolling because he did take steps that were reasonably diligent to get the complaint to the Court outside time. But the standard is filing on the date that the clerk receives it. It's not like in the prison context where the mailbox rule applies. So what latitude should the Court allow in terms of the reasonable diligence prong of the analysis when, again, you're right, you get all the time that you're entitled to, but you take the chance the closer to the deadline you file? Well, Judge Abudu, I absolutely agree with you that the legal standard for assessing when the complaint was filed is when it's in the constructive possession of the clerk. And we don't argue here that the complaint was timely filed. But the correct standard for equitable tolling is just reasonable diligence. It's not maximum feasible diligence. It's not was there any possibility he could have gotten the complaint there on time. It's just whether it was reasonable. And sending a complaint, paying premium, you know, priority mail express from the USPS so that it's scheduled to arrive with a buffer day before your deadline, that is reasonable. I mean, attorneys all over this country, every day, we wait until the day of the deadline, right? And we wait. There's no buffer day. So I think Mr. Beazer was outperforming us all on that front. But then I think, you know, you can add in his interactions with the lawyers, right? I mean... Well, that's a good point, too, because the district court cites the Strickland and then quotes it with respect to counsel. What import, if any, should we allow for the fact that we're talking about a person proceeding pro se? Yeah. I want to make very clear to this Court. We are not asking for a special pro se rule or special dispensation because of his pro se status. We didn't make that argument in the papers. That's not our argument. But I do think his pro se status is relevant in a couple ways. It's relevant to the reasonable diligence analysis. I mean, there's no caseholding that you cannot consider pro se status when it — when analyzing reasonable diligence. And the reason I think it matters is because when you're analyzing reasonable diligence, you need to take into account the alternatives that were available, right? He couldn't e-file, so he couldn't do what us attorneys are doing every day. And, you know, the Southern District of Georgia, the administrative procedures that we cite in our reply brief, page 5, note 2, it says, you know, a pro se litigant has to file paper originals. So he didn't really have any other options. I mean, his two options, as far as I can see, were to mail the complaint. He took the fastest route possible so that it would have a buffer day. That's reasonably diligent. His only other option would have been driving more than 400 miles, over six hours from his home in Chester, Virginia, to get the complaint here, you know, through the — through the eye of this hurricane. So I don't think that's reasonable. And Suarez tells us — Suarez outright rejects the rule that personal delivery is required. What — what standard do you think we use to review the court's decision below? The standard of review is de novo. RCC does not argue otherwise for several good reasons. I think this is a classic legal question. We're on a 12B6. The issue before the district court was whether an agreed-upon set of facts satisfied the legal requirement for tolling. And that's why this court has come to the same conclusion in Booth, Chang, Bailey. And specifically, Chang, footnote 4, repudiates the notion that abusive discretion could apply, which this court did do in Arce. But what's really important is that Arce was a post-trial decision, right? In that case, the district court made an equitable tolling call after a trial, the equity issue being tried to the judge. And — and so, you know, the standard of review that applies there really has nothing to do with this case. And I think you can also see this by thinking about what an abusive discretion standard would look like if you were to apply it. I mean, Arce tells us it's a per se abusive discretion if there's a misapplication of law or if there's clearly erroneous fact findings. I mean, there are no fact findings here, right? There can't possibly be any fact findings. There's certainly no fact findings adverse to Mr. Beazer. What we have is a misapplication of law. Do you think the district court made a fact finding that the hurricane was a problem? No. So what the district court did was assumed that the hurricane caused the mail delay and then said that that hurricane, that circumstance was not extraordinary enough to justify tolling. And, in fact, the district court didn't even say that. I mean, there's no line in the order that says a hurricane isn't sufficient. And I don't know how anyone could think, you know, that a hurricane is not an extraordinary circumstance that could justify tolling. I mean, we cite the old Judge Posner opinion in our opening brief where, like, the blizzard is, like, the blizzard that prevents timely filing is the quintessential example. So it's important to understand what the district court did was assume all the facts Mr. Beazer asserted were true and then made a legal ruling. And that legal ruling was wrong. I have another question that's also kind of related to the prison mailbox rule. And in this instance, you say you're not looking for a categorical rule related to pro se status. How about the fact that you appear to emphasize the fact that your client didn't just throw the petition or the complaint in the mail? He actually tried to get it certified or registered in some way. Is that an important distinction? Would we say that someone who just says on their own that they mailed it, we trust that? Or do you need proof as your client had?  So it's absolutely relevant that Mr. Beazer chose, you know, premium priority express mail, that that meant that his mailing was not only tracked, but that it had a scheduled delivery date. Of course, it was a day before his deadline. I mean, that's crucial. That is, like, the whole reasonable diligence argument. All the interactions with the lawyers, that's just, like, icing on the cake for us. But, I mean, to your question, I think that it would depend on the fact pattern. But the test would be reasonable diligence. So I think, you know, if it's a day or two before your deadline and, you know, you're across the country and you mail your complaint, you know, by ordinary mail, no, I don't think that's going to be reasonably diligent. So I think that is the analysis that the court would undertake. I see my time has expired. I will come back for rebuttal. All right. Thank you very much, Mr. Reines. And we'll hear next from counsel for Richmond County Constructors. Good morning, and may it please the Court. My name is Joshua Deidelberg, appearing for the appellee. First, I'd like to apologize to the Court for my miscitation of Verrett. The appeal should be denied because Mr. Beazer's late filing was caused by a deliberate time gamble, which this Court and the Supreme Court have never found to support equitable tolling. Can I ask you a question about that, though? Yes. Let's say that instead of sending it by one day overnight delivery on the 28th of August, he did the same thing, but he did it on the 21st of August. And for whatever reason, it still didn't arrive until after the deadline. What would your position be then? Well, Your Honor, Villareal, you know, underscores that a litigant has to file by the deadline. And in situations where that doesn't happen and they're seeking equitable tolling, essentially you work backwards, and the courts assess whether there is anything in the causal chain that is, for example, the equivalent of excusable neglect or negligence. And in this case, Mr. Beazer made it clear that his decision in this case to file when he did was because he was waiting for weeks. Actually, if you look at his timeline in the record, it's really about two months in the hope that prospective counsel would take his case, which ultimately it did not. And because of that deliberate time gamble, which caused this— But how is that a gamble for a relatively unsophisticated would-be plaintiff to reach out to a lawyer and to have—I mean, I put some of this on the lawyer. It seems you have some obligation to respond to a potential client in a way that doesn't foreclose filing a complaint on time. And even after dealing with that, he went to the trouble of getting what he thought was a guaranteed mail delivery. I mean, if I send something with overnight delivery and they say it's going to be there, I don't know why I shouldn't be allowed to trust that. I would say a few things. I mean, first of all, this Court and the Supreme Court have never held that hope that a prospective counsel may take your case supports equitable tolling. No, that's not—I think you're—I don't think that's what's being suggested. It was trying to work with counsel for a period of time to take his case. And then once that became—once it became clear that that wasn't going to happen, doing what he needed to do to file as a pro se plaintiff. Well, 10 seconds before Mr. Ratley called him to say that he wasn't taking the case, you know, and this was just days before the deadline, Mr. Beezer had no particular reason, you know, to expect to hear from him at all. It's not like they set an appointment to say, I'm going to give you my decision that we're going to take the case on such and such date. For all he knew— Well, until that point in time, there was no reason for Mr. Beezer to expect they wouldn't take the case. I mean, there was nothing that the attorney said, at least in the record as I've seen it, that would suggest that the attorney wasn't going to take the case. And it seems as though it came as pretty much of a surprise when the attorney didn't take the case. And in any case, immediately thereafter, Mr. Beezer prepares his own complaint and then pays $29 to ensure one night, overnight delivery that it will be there a day before the deadline. So if we could get back to my original question, that is, if he had sent it on August 21st instead of August 28th, and for whatever reason, the Postal Service lost it and it didn't arrive until the day after the deadline, what would your position be then? Right. Well, first of all, in this case, Mr. Beezer is not claiming, you know, what, for example, was called in Sandvik, the general inefficiencies of the post office, or really any other cause other than Hurricane Adelia itself. What difference does it make? Well, general inefficiencies of the post office, or even inefficiencies Inefficiencies of the post office would qualify? No, that would not qualify as extraordinary circumstances. I mean, even Mr. Beezer says that things happen in life. I mean, the post office, you know, as we briefed, does not promise metaphysical certitude, even, you know, for this kind of expedited service. Well, nobody promises that kind of certitude. They do give a money back guarantee. Well, you know, but, you know, ordinary, you know, mistakes or, you know, other, you know, background conditions are not extraordinary. You know, they're baked into the... Well, they're out of the person's control, though. And I think there's language from some of the cases that define extraordinary as beyond the plaintiff's control. So how is, once you put it in the mail and you're at the whims of this agency, not something that constitutes extraordinary? Well, you know, again, in this case, he is claiming that the hurricane caused the delay. In Sandvik, you know, this court indicated that, you know, simply inefficiencies or the equivalent of a mailbox rule does not exist. Right, but in Sandvik, there was no overnight delivery attempt, correct? There was no overnight delivery attempts, and the court said that one of the things that was available to Mr. Sandvik was using a private delivery service. Right, but how in the world is it more reliable to trust FedEx to deliver it overnight than to trust the U.S. Postal Service on overnight delivery? I absolutely concur that you could not just throw it in the mail and see what happened. But why should we have someone put their full trust in FedEx, which could have, sadly, a plane crash? I'm sure people's packages didn't get delivered in light of those guarantees, versus the same guarantee from USPS. Why is one better than the other? Well, I can only go by what the court said. I mean, it did not, for example, say, you know, overnight postal delivery. You know, it deliberately said, you know, a private delivery service. Right, but this isn't like qualified immunity where we have to, we're not looking to see if a court has ever said overnight delivery from USPS is okay. If they say overnight delivery from FedEx would be preferable, I don't understand why it would be any different to have overnight delivery from a different service, whether it's UPS or another, you know, DHL, whatever. You know, or in Sandvik, it was also available to him, you know, to have filed early. You know, this is not a situation of legal disability, you know, fraud, concealment, and so forth. It was available within his causal timeline. But the argument is that, you know, he gets the full 90 days, so you can't penalize him for filing within those 90, well, submitting his complaint within those 90 days, even though it wasn't received. So that's one question. And then the other question is, I'm not sure I heard an answer to Judge Rosenbaum's hypothetical other than the person is out of luck, which now raises a concern for me about access to the courts. Right. Well, first of all, he has to get it done within the timeline. And if you don't, then you're in a different box looking at whether equitable tolling is supported. And it is not supported if there is excusable neglect in his causal timeline, such as a decision to wait. In Judge Rosenbaum's hypothetical, we would have to look to see whether there are extraordinary circumstances that were not truly outside of his— Same circumstances as these. Exact same circumstances as these, except everything is a week earlier, except for the delivery, which is at the same time. We would have to look at, you know, what actually caused the late filing and, you know, what he could establish. You know, in this case— Well, the Postal Service lost it, even though he paid $29 for overnight delivery. Well, you know, again, that's not what happened in this case, and that's not what he's arguing because he's— Okay, but that's the hypothetical. You know, there— You know, the court has held in Sandvik that general inefficiencies of the post office, which include, you know, some aspect of things going wrong, are insufficient to cause extraordinary circumstances. Right, but he is not arguing for general inefficiencies of the post office. He is pointing out that he paid for overnight delivery, which would have gotten it there a day early. That's different than general inefficiencies of the post office, isn't it? Right, but in this case, he put himself in the path of whatever happened because of his time choice, rather than it standing in his way. What if— What if we have the exact same fact pattern as we do in this case, but instead of using the Postal Service, he uses FedEx? He uses FedEx? Yes. And what— The exact same thing happened. Everything. Everything's the same. No, because, you know, in Sandvik, it's giving examples of what the court assumes, you know, will get it done. If that doesn't happen, he still has to prove extraordinary circumstances, which he's seeking a remand in this case, but I don't think that's necessary. I mean, first of all, he put himself in the path of whatever happened. Second of all, hurricanes, you know, as, you know, as we briefed, don't happen overnight. You know, he indicated that he was aware of the hurricane in their reply brief. They described the approaching storm. You have to take action earlier. All he had to do, Judge Rosenbaum, is do exactly what you suggest. You know, mail this on the 21st. You know, presumably, it would have gotten there, but that's not what he did in this case. Things still happen, though. I mean, things happen all the time. You know, as Judge Grant pointed out, and I mean, obviously, tragically, planes crash with packages. Packages don't get where they're going. Things happen. And, you know, there's only so much that can ever be within the control of a party who's trying to file. How much are we to demand from parties? You know, I think in this case, what Mr. Beazer did, you know, was not reasonable given, you know, the court's cases and the Supreme Court cases. Let's say there's a lawyer filing for a client and they plan to file, you know, they're working on other cases, whatever, and they plan to, they're finally getting to this complaint and, but just as they get ready to file, there's a hurricane coming through and the power goes out to the firm's systems and it doesn't come back on until the day after the deadline. Does equitable tolling apply there? Well, I would say in many cases it would, but it might not. I mean, but shouldn't the firm know that there's a hurricane coming, so maybe they'll lose power and so they should have done it a week before? Well, I mean, hurricanes, ipso facto, aren't acts of God. It really depends on the context. How much did you anticipate it? Could you have done something differently? So it would depend on that context. Well, I'm telling you the context, though, so what's the answer? Well, you know, if they could have filed, reasonably filed earlier. Of course, of course they could have. It's human not to do so. I don't know many lawyers who file a week in advance. I mean, maybe you do. I don't. So, of course, lawyers always know they could file a week in advance. But then you do so at your own risk. I mean, it's a... So no equitable tolling in that case? You just tell your client, sorry? It would be difficult to see if it was your deliberate time choice. I mean, if you prepared the perfect complaint on day one and put it on a shelf for 89 days, I would be surprised if this court would grant equitable tolling. I would be surprised if any lawyer in the history of time had prepared a perfect complaint on day one. That's not how lawyers tend to operate, as I suspect you know. Obviously hypothetical. And again, Mr. Beazer was not an attorney here. And even in the scenarios you described, as your counsel on the other side noted, a lot of attorneys use electronic filing. So you can wait till the 29th and the complaint gets filed on the 29th. Here you have an individual who doesn't have access to that technology. So my question again is, how does this advance access to the courts, especially for pro se litigants? Well, you know, as counsel indicated, he's not seeking a special rule for pro se litigants. And obviously, you know, they do have, you know, sort of different modes that they need to do, you know, to undertake to get the complaint filed. But in this case, he could have prepared the same complaint even a few days before and it would have gotten there, presumably. Well, I mean, presumably why? Maybe it wouldn't have, right? I mean, who can say maybe his complaint would have been on that plane that crashed and never would have gotten there. So maybe you should have had to do it three weeks before. I mean, what's the standard? Well, I mean, the standard was, you know, was it available to him, you know, to mail this complaint earlier, even a few days? And it was. Is that the standard? Is the standard really, could he possibly have mailed it earlier? I've not seen that in the cases. Well, again, I think you go back from what happened, you know, and you look to see if there's excusable neglect or the equivalent, then equitable tolling is not available because essentially in a Menominee way, he put himself in the path of the extraordinary circumstances. I'm wondering if I could just briefly discuss Suarez in my limited time. Suarez does not apply for a number of reasons. First of all, it was not a waiting case like this. Second, it doesn't apply the standard of Villareal. It talks about mistakes, you know, which are essentially excusable neglect, you know, which is exactly the test that Villareal rejected. And it also is based on factors such as lack of prejudice, lack of subjective intent to file, you know, which are not part of this. Tell me why you don't think it was a waiting case. I'm sorry. Tell me why you don't think it was a waiting case. There's nothing in the facts that indicate that the complaint was filed, you know, because the plaintiff waited until a particular time. But I don't understand why that wouldn't be the case because if the plaintiff hadn't waited, it would have been filed earlier. It presumably would have been filed earlier. There was no disability as to why the plaintiff in that case did not file earlier. Right. So there wasn't there. I would say there wasn't even an explanation given for the delay. There was no explanation. Which seems worse than the explanation of trying to work with counsel and finding out at the last minute that counsel wouldn't take your case. Well, also in Suarez, there was indication that they could not rule out that the court itself, the clerk itself, was responsible for the delayed filing, which obviously is different than a mailing case, a pure mailing case. And my last question has to do with the extraordinary circumstances Prong, given that he also argued a hurricane not only impacted his ability to file on time, but impacted the Postal Services ability. We've got cases in this circuit where courts have recognized that a hurricane justifies extending a voting deadline. Why shouldn't that apply with respect to this situation? Well, in this case, Your Honor, there's, you know, Mr. Beazer, first of all, you know, is looking for a remand to prove that. But I think staying within the four corners of what was filed, the hurricane report that was submitted shows that there was no unusual hurricane activity in any of the key locations. I mean, at most, you know, he suggests that there was, in figure seven of the hurricane report, rain in Augusta. You know, what that shows is that over a four day period, there was between one and three inches of rain, you know, which is hardly extraordinary circumstances. We would have to sandblast the motto of the post office off of the building in New York, you know, if just, you know. Well, I mean, I thought the record showed the post office itself was not delivering mail during that time. Well, that's his claim, Your Honor. But it's been, you know, undermined by the hurricane report that he actually submitted. That's the hurricane itself caused the delay. Thank you. All right. Thank you very much, Mr. Deidelberg. Thank you. And Mr. Reines, you have reserved three minutes. A few brief points in rebuttal. Suarez. Suarez is still good law. The court's holding in Suarez assumed that the complaint had arrived on the 92nd day. The court did note that, you know, maybe it got there on time. It wasn't sure. That's not part of the court's holding. It applied equitable tolerance, an independent holding that would have only made sense if the court assumed that the complaint was not timely filed. So it's good law and it's controlling. And it's really an a fortiori case because in Suarez, there was no hurricane. It was the general inefficiency of the post. That's what cut it. And so I don't know what I'm hearing when I hear that the general inefficiency of the post would not qualify. Not only does Suarez say that. Well, in fairness, in Suarez, we said that there were things going on in the Southern District of Florida's clerk's office. Things were being reorganized and it wasn't clear whether the clerk's office was to blame. Didn't they? That's correct, Your Honor. But I think it's important to consider the way the court construed the plaintiff's argument. It said, Suarez contends the complaint was filed on the 92nd day. And then it said, we only know that the complaint was not filed. We don't know why it was not filed. And so this gets to the colloquy you were having with opposing counsel, where essentially, you know, if we didn't know why the complaint did not get there on time, would we still have tolling? The answer is yes. So you could subtract out the entire hurricane element of this case, and we would still have tolling under Suarez. I think I heard about the — I'm sorry. You're saying that excluding the hurricane, you would still establish extraordinary circumstances? Under Suarez, yes. The extraordinary circumstances in that case would be the failure of the post to perform its function, to perform its assurance to him. I mean, if the court has reservations about that, you don't need to go there. I mean, I think you can write a narrow opinion that discusses the hurricane. But I think the court wouldn't be breaking any new ground if it says that. It's actually different anyway, because in that case, it was just dropped into the post, right? I mean, at that time, maybe postage stamps were $0.20. No one was paying $29 to ensure overnight delivery. So it seems to me that this case is different than that case anyway. This case is more compelling. Well, it's more — right. I think what, Judge Rosenbaum, you're saying is that even if you subtract the hurricane out of this fact pattern, it's still a stronger case than Suarez because he had priority express mail, so his mailing was tracked and had a scheduled delivery date. And so, you know — And that's my concern. And this is the last time I'll talk about access to justice because you're spending a lot of emphasis — you're putting a lot of emphasis on the fact that he paid. There's some individuals who aren't able to satisfy that economic requirement, and all they can do is pay for the postage stamp. So how much emphasis should we put on what you've highlighted? Wholeheartedly agree with the concern, Judge Abudu. I think what we want is a ruling that recognizes the diligence that he put into this. I mean, to choose the fastest delivery option available, I think shows the reasonable diligence. That's the standard. And so, you know, it would be a harder case if someone used ordinary mail and you don't need to reach that here. Judge Grant, you know, your point about how in the world could we be distinguishing between, you know, whether you have — you chose the government's fastest service or a private carrier's fastest service. I mean, I agree with that. There's no way that we're drawing that distinction into law, and he had no notice of that. It's pure speculation to think that a private carrier would have gotten the job done. I'll just — I'll just close, and, Judge Abudu, to your point about access to justice, I think we should take just a half step back here, OK? Mr. Beazer makes serious claims of race discrimination and retaliation at his workplace, including the hanging of a noose at his work site, OK? They have never challenged the plausibility of his claims. And although, you know, I think I heard a different position today about prejudice. In their brief, they didn't argue that lack of prejudice to the defendant is a plus factor for tolling, and it is under Supreme Court law, and they haven't even attempted to articulate any prejudice they might have suffered. This Court should reverse. Thank you. All right. Thank you very much, counsel. We know, Mr. Reines, you were appointed, and you accepted the appointment in an Addendum 5 case. We very much appreciate your capable services and representation here today. Thank you.